In the Matter of MORRIS LEVY, an Attorney, Respondent.

In the Matter of HARRY HARTMAN, an Attorney, Respondent.

First Department, February 14, 1930.

*Isidor J. Kresel*, for the petitioners.

*Morris Levy* and *Harry Hartman* [*Kenneth M. Spence* of counsel], respondents in person.

DOWLING, P. J.  The respondents in these proceedings have been engaged in the practice of law under the firm name of Levy & Hartman.

The respondent Harry Hartman was admitted to practice as an attorney and counselor at law in the State of New York in February, 1910, at a term of the Appellate Division of the Supreme Court of the State of New York, Second Department.

The respondent Morris Levy was admitted to practice as an attorney and counselor at law in the State of New York on December 30, 1914, at a term of the Appellate Division of the Supreme Court of the State of New York, First Department.

They have been partners in the practice of the law since 1922.

Separate petitions have been filed by the petitioners against each of the respondents, but the charges are identical; they are, on information and belief, that each respondent has been guilty of misconduct as an attorney at law as follows:

(a) For many years last past the respondent and his partner, with the knowledge and approval of both, were engaged in the solicitation of contracts and retainers from persons injured in accidents, retaining and authorizing the respondent and his firm to act as their attorneys to collect damages sustained by them as a result of such accidents and to bring suits at law in their behalf to recover such damages.

(b) For many years last past the respondent and his partner, with the knowledge and approval of both, employed divers persons, not members of the bar of the State of New York, who, with respondent's knowledge and approval, solicited and procured contracts and retainers from persons injured in accidents, retaining and authorizing respondent and his firm to act as their attorneys to collect damages sustained by them as a result of said accidents and to bring suits at law in their behalf to recover such damages, and the respondent and his said firm paid, or promised to pay, the persons so employed by them various sums of money as salaries, fees, commissions or compensation for the services rendered by them in soliciting and procuring said contracts and retainers.

(c) For many years last past the respondent and his partner, with the knowledge and approval of both, promised and gave divers persons, not members of the bar of the State of New York, valuable considerations for inducing persons injured in accidents to retain them as their attorneys for the purpose of bringing actions or suits in their behalf to collect money damages claimed to have been sustained by them as a result of said accidents, or to represent said claimants in the pursuit of their civil remedies for the recovery of their claims.

The respondents have filed separate answers in which each admits the charges alleged in subdivisions (a) and (b) of paragraph VI of the petitions in the following language: " Respondent admits that from about the latter part of the year 1923, to and including part of the year 1927, the respondent's firm, with respondent's knowledge and consent, engaged in the solicitation of contracts and retainers from persons injured in accidents, retaining and authorizing the respondent's firm to act as their attorneys to collect damages sustained by them as a result of such accidents and to bring suits at law in their behalf to recover such damages, and respondent's firm, with respondent's knowledge and consent, employed and engaged divers persons, not members of the Bar of the State of New York,

to solicit and procure contracts and retainers from persons injured in accidents, retaining and authorizing respondent's firm to act as their attorneys to collect damages sustained by them as a result of said accidents, and to bring suits at law in their behalf to recover such damages, and that the respondent's firm promised and did pay such persons various sums of money for procuring such contracts or retainers to represent the said claimants in the pursuit of their civil remedies and for the recovery of their claims.''

The record in this case is made up of the testimony of the respondents themselves as given in the course of the investigation before Mr. Justice Wasservogel. It discloses a shameless and continued violation of the Canon of Ethics and the statutes of this State by respondents in the conduct of the negligence department of their business, which constituted seventy-five per cent of the total. At the time of the investigation they had approximately 700 actions for personal injuries pending, and 200 to 300 more in the Municipal Courts for injuries to property due to negligence. Admittedly, they could not have obtained that number of personal injury cases by sitting in their office and waiting for them, so they employed "runners," whose business it was to solicit the employment of respondents by persons injured in accidents, by a printed form of retainer whereby the respondents were to receive fifty per cent of the amount recovered, of which fee the "runner" was to receive thirty-three and one-third per cent. Pending settlement or judgment, the "runner" received from time to time amounts on account of his prospective share. But respondents accepted retainers only in cases where the risk was covered by insurance; in other cases, they returned or destroyed the retainer. The firm employed three "regular runners" in its office during a period of six years and also did business with eight or nine "independent contractors," who are runners not attached to any regular law office and with whom they made the same arrangements for one-third participation in their fee. At times they paid salaries to one or all of the three "regular runners" in their employ, but such salaries were charged against their percentages. Sometimes the "independent contractors" would be hard up and would sell their interest in a case outright to the respondents. It seems that some times after an "independent contractor" had brought in a retainer to respondents, another lawyer would come in and take the case away from them. At least fifty per cent of the negligence business of respondents concededly came through "runners." The runners were paid either in cash or by checks drawn to the order of "cash." Competition among the "runners" is so keen that they have to use automobiles to get around quickly enough to get results. Respond-

ent Hartman admitted that the firm may have loaned the money " to their runners to buy an automobile." Respondent Levy testified that from his experience he had learned that " runners ". have a system of getting information at police headquarters; they get telephone calls from police officers; also information from hospital doctors, or any person who may come in contact with an injured person. Respondent Hartman corroborated him in this subject and admitted that various policemen had the firm's cards in their pockets, but denied the firm paid them anything. Respondent Levy said his " runners " did not get information from hospitals but they did get it from police headquarters and police officers. It was testified there was a practice of having an indemnity company settle a number of cases for a lump sum which the lawyer might apportion among the plaintiffs in those cases as he saw fit. Also public adjusters are used to effect settlements with certain indemnity companies and other corporations, and these adjusters are paid by the plaintiff's lawyer if successful, the amount not being fixed or on a percentage basis.

It is unnecessary to go at further length into the details of the sordid and disgraceful methods by which the practice of what should be an honorable profession was turned into a disreputable and degrading business. For six years respondents soiled their hands by passing over money to runners, " regular " and " independent contractors " or " free lances," and profited by the results of their operations, which continued until the initiation of the proceedings to bring about an investigation of such practices. The respondents would certainly be fit subjects for disbarment, despite their own pleas for clemency, in the face of their admissions, were it not for the fact that the counsel for the petitioners herein join in that plea. It is said that respondents were among the first to come forward and testify in the investigation; that they made a frank and honest disclosure of the manner in which they conducted their practice; that they appear to have co-operated with the petitioners in the investigation, and among other things, disclosed the names of " runners." Giving due weight to these representations by the petitioners, still we believe the respondents should not escape punishment for their conceded violations of their professional obligations, of the Canon of Ethics and of the statutes. The respondents should, therefore, each be suspended for the period of two years, with leave to apply for reinstatement at the expiration of that term upon proof of their compliance with the conditions incorporated in the orders.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondents suspended for two years.